AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JAN 2 2 2014
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of                )
*(Briefly describe the property to be searched*   )
*or identify the person by name and address)*     )   Case No.
Black Motorola Boost Mobile cellular telephone with )
pink and black protective case,               )   '14 MJ 0230
IMEI: 001700750704900                          )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Southern___ District of ___California___ *(identify the person or describe property to be searched and give its location)*: **See Attachment A-3**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § ___841(a)(1)___, and the application is based on these facts: **See Attached Affidavit.**

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jeffrey A. Wight, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/22/14

*Judge's signature*

City and state: San Diego, California        Hon. William V. Gallo, US Magistrate Judge
*Printed name and title*

# ATTACHMENT A-3

Black Motorola Boost Mobile cellular telephone with pink and black protective case, IMEI: 001700750704900;
S/N: 364VMLQ6RX; SIM Card ID: 000838997564300
(**"Subject Telephone 3"**)

currently in the possession of DEA in San Diego, California.

## **ATTACHMENT B**

The following evidence to be searched for and seized pertains to violations of 21 U.S.C. §§ 841(a)(1) and 846 (Possession with Intent to Distribute and Distribution of a Controlled Substance and Conspiracy to do the same):

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data from 2010 to February 20, 2013:

a. tending to indicate efforts to distribute methamphetamine and collect narcotics proceeds;

b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to distribute methamphetamine and collect narcotics proceeds;

c. tending to identify co-conspirators, criminal associates, or others involved in indicate efforts to distribute methamphetamine and collect narcotics proceeds;

d. tending to identify travel to or presence at locations indicate efforts to distribute methamphetamine and collect narcotics proceeds;

e. tending to identify the user of, or persons with control over or access to the **Subject Telephones**; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

## AFFIDAVIT

I, Jeffrey A. Wight, being duly sworn, hereby depose and say:

### A. EXPERIENCE AND TRAINING

1. I am a Special Agent for the United States Drug Enforcement Administration (DEA), and I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered by law to conduct investigations and to make arrests for felony offenses. I was hired by the DEA in October of 2000, and I attended the DEA academy for approximately sixteen (16) weeks, where I was trained in conducting narcotics investigations. In February 2001, I was sworn as a DEA Special Agent and was assigned to DEA Riverside District Office's Enforcement Group 1. This enforcement group primarily investigated illegal drug trafficking organizations operating in the United States, and internationally, including those organizations whose operations involve the distribution of wholesale quantities of cocaine, methamphetamine, marijuana, ecstasy and heroin in and around the Riverside, San Bernardino, and Los Angeles areas. In October 2007, I was assigned to the DEA Cartagena, Colombia Resident Office's Colombian Pacific Coast Maritime group. During my tenure in Cartagena, Colombia, I primarily focused on the Colombian drug trafficking organizations which transported ton quantities of cocaine, heroin and marijuana from the Pacific Coast of Colombia to Central America, Mexico, and the United States. In November 2011, I was transferred to the DEA San Diego Field Division's Enforcement Group 1. This enforcement group is part of the Major Mexican Trafficking Task Force (MMTTF) which focuses on the Mexican Drug Cartels operating in Tijuana, Mexico, and San Diego, California.

1

2. While with the DEA, I have participated in hundreds of drug investigations. These investigations involved: (1) unlawful importation, exportation, manufacture, possession with intent to distribute and distribution of narcotics; (2) the laundering of narcotics proceeds and monetary instruments derived from narcotics activities; and (3) conspiracies associated with narcotics offenses. These investigations have involved debriefing defendants, witnesses and informants, conducting surveillance, assisting in court ordered wire interceptions, executing search warrants, seizing narcotics and narcotics related assets, and making arrests for narcotics related offenses. As such, I am aware that drug traffickers often conduct business via telephone and often use code and/or vague language to disguise their illegal activities. This training and experience forms the basis for opinions expressed below. The following is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, interviews, database checks, phone analysis, and other investigation.

3. Based on my experience, and through extensive consultation with other agents who are experienced in conducting drug trafficking investigations, I am familiar with the methods utilized in narcotics trafficking operations, as well as the methods and means used by drug trafficking organizations to control narcotics trafficking. Specifically, I am familiar with the importation of illegal narcotics into the United States from Mexico and the transportation of narcotics to centralized distribution points, such as San Diego and Los Angeles, California. Additionally, I know that once the narcotics reach their final destination cities they are distributed by wholesale dealers down to street level users often through mid- level distributors. I am also aware that drug trafficking organizations must collect and

transport drug proceeds from the sale of their drugs and often these drug proceeds are transported in the form of bulk currency.

4. Through these discussions and through my own training and experience, I know that drug traffickers principally rely on cellular phones to communicate with associates and other co-conspirators. The use of telephones is essential in maintaining timely long distance and local contacts with fellow drug traffickers. They often use cellular phones to coordinate the delivery of drugs and believe it is a secure method of communications. I also know that narcotics traffickers will often use fraudulent information to subscribe to communication facilities, especially cellular telephones, and frequently change communications facilities in order to thwart law enforcement efforts to investigate their use of cell phones and other communications facilities.

5. My experience as a law enforcement officer, my participation in the investigation of narcotics organizations, my conversations with other agents and other state and local law enforcement officers familiar with narcotics trafficking and organized crime, as well as my training, form the basis of the opinions and conclusions set forth below, which I have drawn from the facts set forth herein. Because this affidavit is being prepared for the limited purpose of obtaining authorization to search the Subject Telephones, I have not set forth all of the facts known to me about this investigation; I have instead included only the facts I believe are necessary to establish probable cause for my request. Conversations and discussions included herein are set forth in substance unless otherwise noted. My interpretations of certain statements are set forth in parenthesis or brackets, and are based upon my knowledge of the investigation. Dates and times established herein are approximations.

### B. PROPERTY TO BE SEARCHED

6. This affidavit is submitted in support of an application to search the following cellular telephones currently in the possession of DEA, San Diego:

> 1) Verizon HTC smartphone model #ADR6425LVW; 760-705-6828, IMSI 311480003234134; IMEI: 990000336805967; S/N: HT19YS208008 ("**Subject Telephone 1**")
>
> 2) Black HTC cellular telephone, IMSI: 353171051736066 ("**Subject Telephone 2**")
>
> 3) Black Motorola Boost Mobile cellular telephone with pink and black protective case, IMEI: 001700750704900; S/N: 364VMLQ6RX; SIM Card ID: 000838997564300 ("**Subject Telephone 3**")
>
> 4) Black Motorola Sprint cellular telephone Model MB612; IMEI: 356454043240182 HW A; MSN: M666SJ3P8T ("**Subject Telephone 4**")

(hereinafter referred to collectively as "**Subject Telephones**")
Attachments A-1 through A-4

### C. ITEMS TO BE SEIZED

7. The following evidence to be searched for and seized pertains to violations of 21 U.S.C. §§ 841(a)(1) and 846 (Possession with Intent to Distribute and Distribution of a Controlled Substance and Conspiracy to do the same.

### D. PROBABLE CAUSE

8. On December 3, 2013, OMAR Aguilar-Valdovinos, a.k.a. Chon, (hereinafter "OMAR") was arrested by law enforcement agents at the Starbucks Coffee Shop, 126 Knoll Road, San Marcos, CA, pursuant to a Federal Arrest

4

Warrant issued by United States Magistrate Judge Bartick. On December 13, 2013, a federal grand jury returned a Superseding Indictment (13cr0789) charging OMAR and 19 others with drug trafficking offenses, including conspiracy to distribute controlled substances.

9. On January 24, 2013, based on court authorized intercepted calls between several individuals, including calls between co-defendants Isidro RODRIGUEZ-LARA and DAVID Aguilar-Valdovinos ("DAVID"), agents seized 858 grams of methamphetamine actual from codefendant Nathan Kahakulani YASSO. As discussed below, the drug transaction also involved OMAR, suspected user of the **Subject Telephones**, and Leonardo GARCIA-GAYTAN.

10. On January 24, 2013 at approximately 9:26 a.m., during a call between RODRIGUEZ-LARA and DAVID, DAVID asked RODRIGUEZ-LARA "what was going on" [status regarding pending drug transaction]. During the call, DAVID stated that "the guy that was coming for the part was with his wife, but the wife was feeling ill and wanted to head back" [codefendant YASSO who was to pick up drugs was with his wife who felt sick and they were going to return].

11. Later intercepted calls between RODRIGUEZ-LARA and DAVID indicated that DAVID's drug courier GARCIA-GAYTAN would be arriving at co-defendant Jose Luis LOPEZ's residence in a "dirt colored Lincoln" to pick up the drug shipment and take it to DAVID's customers. At approximately 11:09 a.m. on January 24, 2013, agents observed a brown Lincoln sedan, driven by an individual later identified as GARCIA-GAYTAN arrive in the vicinity of LOPEZ's residence and shortly thereafter depart the area. Agents maintained surveillance on the brown Lincoln. Shortly after the brown Lincoln departed, intercepted calls between RODRIGUEZ-LARA and LOPEZ indicated that DAVID's courier had

retrieved the drugs from LOPEZ. Agents followed the brown Lincoln sedan to a Jack-in-the-Box restaurant in Escondido, CA where the drugs, contained in a red gift bag, were delivered to YASSO who was driving a white Cadillac sedan. Agents coordinated a traffic stop with San Diego Sheriff's Department (SDSD). SDSD officers conducted the traffic stop at approximately 11:40 a.m. and later found a red paper bag, a Christmas gift bag, which inside contained a Neutrogena box, which held approximately 858 grams of methamphetamine actual.

12. Codefendant YASSO did not make any statements during his initial post-arrest interview. He is now cooperating with law enforcement with the hope of receiving a reduced sentence. Through further investigation and based upon the intercepted calls between DAVID and RODRIGUEZ-Lara, agents learned one of DAVID's brothers, known as Chon, was involved in the January 24, 2013 drug transfer. During an interview, Codefendant YASSO admitted to agents that he had made arrangements by telephone prior to January 24, 2013 with OMAR, suspected user of **Subject Telephones**, to purchase approximately 2 pounds of methamphetamine. Agents showed a photograph to YASSO who indicated that the subject in the photograph was "OMAR," the person who sold him the two pounds of methamphetamine. The photograph depicted defendant OMAR Aguilar-Valdovinos. YASSO has provided agents with information about OMAR that has been corroborated and/or verified and agents believe YASSO to be reliable as to this information.

13. The day after the January 24, 2013 seizure of the methamphetamine by law enforcement, intercepted calls between RODRIGUEZ-LARA and DAVID on January 25, 2013, suggested that DAVID's brother, later identified as OMAR, had known YASSO. During an intercepted call on January 25, 2013, at

approximately 4:47 p.m. between DAVID and RODRIGUEZ-LARA, DAVID indicated that "they" (DAVID and brother, later identified as OMAR) met the "guy" (YASSO) at a "location" (Jack-in-Box in Escondido) and took off quickly. DAVID said he told "his brother" (OMAR) to call "him" (YASSO) but that "he" (YASSO) was not answering. Telephone toll records indicate that one of the phones associated with DAVID was in frequent communication with a phone associated with his courier, GARCIA-GAYTAN during the drug transaction on January 24, 2013.

14.     Agents are aware that David Aguilar-Valdovinos and Omar Aguilar-Valdovinos are brothers as they share the same paternal and maternal last names. In addition, OMAR while providing biographic information during his arrest indicated that he has a brother named "David."

<u>SAVED CONTACTS FOR OMAR ON DAVID'S CELL PHONES</u>

15.     On February 20, 2013, DAVID was arrested at his residence on La Mirada Drive in San Marcos and agents while executing a search warrant seized 13 cellular telephones from DAVID's bedroom (12 of those cell phones appear to be associated with him). Subsequent search warrants were obtained for some of those phones as the initial search was incomplete.

16.     A search of DAVID's i776 cell phone (IMEI:001700145973810) revealed that it contained two saved contacts for RODRIGUEZ-LARA's phone numbers that were the subject of court authorized interceptions. In addition, search of DAVID's i776 revealed a Contact 81 labeled "Chon" and containing the following phone number "760-272-4963." Furthermore, Contact 82 in DAVID's i776 is "Chon2" and contains the following information "740-837-0020, 136*136*4." Agents are aware that Chon is one of OMAR's nicknames.

17. A search of DAVID's i686 cell phone (IMEI: 001701330686890) revealed that it contained a saved contact for RODRIGUEZ-LARA's phone number that was the subject of court authorized interceptions. In addition, search of DAVID's i686 revealed that Contact 81 is labeled "Chon 2" and contains the following information "740-837-0020, 136*136*4." Furthermore, Contact 163 is labeled "Vegas" and contains the following phone number "702-273-7791." Codefendant YASSO indicated that that is the phone number that he used to communicate with OMAR regarding the January 24, 2013 drug transfer. In addition, subscriber information for that phone indicates that it is subscribed to a female whose last name is YASSO at an address in the Las Vegas area.

TOLL RECORDS

18. Tolls records also indicate that 740-837-0020, a phone number associated with OMAR was in contact before and after the drug transfer at Jack-in-the-Box restaurant in Escondido with codefendant YASSO's phone 702-273-2291. In addition, on January 25, 2013, following DAVID and RODRIGUEZ-LARA's intercepted phone call, a phone associated with OMAR, 740-837-0020, 136*136*4, dialed codefendant YASSO at 702-273-2291. A few minutes later, a phone associated with DAVID dialed OMAR at 136*136*4 and the call lasted 42 seconds. Less than one hour later, DAVID dialed codefendant YASSO at 702-273-2291.

**SEIZURE OF SUBJECT TELEPHONES & OMAR'S ARREST**

19. On December 3, 2013 at approximately 4:16PM, agents observed a Hispanic male matching the description of OMAR, exit the residence at 1315 Shadow Hills Drive, in San Marcos, California, and enter the front passenger seat of a white Honda Civic sedan parked in the driveway. Agents observed a female

8

(suspected to be OMAR's wife) later identified as Reyna GALVAN-Ramirez and two small children exit the residence and enter the white Honda Civic. Agents observed the vehicle, driven by GALVAN-Ramirez, back out of the driveway and depart the residence. Agents followed the vehicle until arriving at the Starbucks Coffee Shop, 126 Knoll Road, San Marcos, CA and it entered the drive-thru of the business.

20. At approximately 4:33PM, agents conducted a vehicle stop of the white Honda Civic as it departed the drive-thru of the Starbucks Coffee Shop and positively identified OMAR Aguilar-Valdovinos, the subject wearing the white-hooded sweatshirt. Agents arrested OMAR based on the federal arrest warrant. Agents identified the driver of the vehicle as Reyna Esmeralda GALVAN-Ramirez. GALVAN-Ramirez told agents she was the mother of OMAR's children who were also present in the back seat of the vehicle.

21. Incident to OMAR's arrest, agents seized a green/brown Coach brand leather wallet (which contained miscellaneous paperwork and a Mexican Consular Identification card in the name of OMAR Aguilar-Valdovinos) which was on OMAR's person. Agents also seized **Subject Telephone 1** which was in the dash console above the radio in the front passenger area of the white Honda Civic. GALVAN-Ramirez stated to the undersigned special agent that **Subject Telephone 1** belonged to OMAR.

22. While obtaining biographical information from OMAR, he confirmed his residence to be at 1315 Shadow Hills Drive, San Marcos, CA. OMAR stated his brother Ciriaco AGUILAR-Valdovinos and his sister-in-law, Araceli AGUILAR were the owners of the residence, but he lived with them and had a private room where he slept. OMAR claimed his wife (GALVAN-Ramirez) and

9

two children did not live at the residence, but would stay with him from time to time. OMAR gave agents verbal consent for the agents to search the room in which he slept at 1315 Shadow Hills Drive, San Marcos, CA.

23. Agents returned to 1315 Shadow Hills Drive, San Marcos, CA and upon arrival made contact with a Hispanic female in the driveway of the residence who identified herself as Araceli Aguilar, OMAR's sister-in-law. Araceli Aguilar confirmed that she and her husband, Ciriaco Aguilar-Valdovinos were the homeowners of the residence. She further confirmed that her husband was OMAR's brother, that OMAR lived with them, and the furthermost southeast bedroom of the house was OMAR's. She also stated her two minor children were in the residence and her husband was not at home.

24. During the consent search of OMAR's bedroom (Southeast bedroom) agents located and seized several items, including the following:

> **Subject Telephone 2** located in the top middle drawer of a large yellow dresser/vanity;
>
> A Mexican Passport in the name of Omar Aguilar-Valdovinos located in the top right drawer of a large yellow dresser/vanity;
>
> **Subject Telephone 3** located in a brown wicker basket in the upper shelf of the closet; and
>
> **Subject Telephone 4** located in a brown wicker basket in the upper shelf of the closet.

25. On December 3, 2013, OMAR was transported to the DEA San Diego Field Office where he was processed and interviewed. Prior to interviewing OMAR, agents provided him with a DEA Form 88a, Consent to Search form in

Spanish. Agents reminded him that he had given the agents verbal consent to search his bedroom located at 1315 Shadow Hills Drive, San Marcos, CA. OMAR confirmed that he had done so. Agents asked OMAR to sign and date the DEA Form 88a again confirming that he willingly gave the agents consent to search his bedroom. OMAR signed and dated the said DEA Form 88a. Agents then provided OMAR with a copy of the DEA 12, Receipt for Cash or Other Items which was left at 1315 Shadow Hills Drive, documenting the items seized during the search of his bedroom. Agents reviewed each item with OMAR who confirmed that **Subject Telephone 2, 3, and 4,** as well as the green Mexican Passport were all his possessions. OMAR stated that two other phones and other items belonged to his wife Reyna GALVAN-Ramirez. OMAR was advised of his Miranda rights and he invoked his right to remain silent.

26. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the methamphetamine distribution activities of OMAR and his co-conspirators, such as telephone numbers, made and received calls, evidence of dominion and control, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **SUBJECT TELEPHONES** and/or SIM cards described herein. Furthermore, based upon my experience and training, as well as consultation with other experienced law enforcement I am aware while drug traffickers may stop using a phone number associated with a cell phone, they often retain the physical cell phone device that was used in furtherance of their criminal activities, especially if there was no overt law enforcement action specifically against them, and

information contained in those cell phone devices is often preserved for many months. For example, in this investigation, OMAR's brother DAVID was found with 12 phones associated with him and OMAR had 4 phones associated with him.

### E. **METHODOLOGY**

**Procedures For Electronically Stored Information**

27.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the

process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

28. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephone, and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

29. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## SUMMARY

30. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that defendant OMAR used the **Subject Telephones** to facilitate the offenses of conspiracy to distribute methamphetamine by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), and 846.

31. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by OMAR continue to exist on the **Subject Telephones**.

32. I respectfully request warrants be issued authorizing me, a DEA SA, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A-1 through A-4, and seize the items listed in Attachment B.

                                            JEFFREY A. WIGHT, Special Agent
                                            Drug Enforcement Administration

SUBSCRIBED TO AND SWORN TO
before me this 22 day of January, 2014.

_____
HONORABLE WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE

14